# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 18, 2020

Lyle W. Cayce
Clerk

No. 17-20661

DESHUN THOMAS,

*Petitioner—Appellant*,

*versus*

BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-290

ON PETITION FOR REHEARING EN BANC

(Opinion  7/29/20, 968 F.3d 352 (5ᵗʰ Cir. 2020)

BEFORE DAVIS, JONES, AND ENGELHARDT, *Circuit Judges*.
PER CURIAM:

The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (Fed. R. App. P. 35 and 5ᵗʰ Circ. R. 35), the petition for rehearing en banc is **DENIED.**

In the en banc poll, 6 judges voted in favor of rehearing (Judges Stewart, Dennis, Elrod, Graves, Higginson, and Willett), and 11 judges voted against rehearing (Chief Judge Owen and Judges Jones, Smith, Southwick, Haynes, Costa, Ho, Duncan, Engelhardt, Oldham and Wilson).

ENTERED FOR THE COURT:

EDITH H. JONES
*United States Circuit Judge*

JAMES E. GRAVES, JR., *Circuit Judge*, dissenting from the denial of rehearing en banc, joined by ELROD, *Circuit Judge*:

Because the panel opinion is contrary to both *Haynes v. Cain*, 298 F.3d 375 (5th Cir. 2002) and *United States v. Cronic*, 466 U.S. 648 (1984), I respectfully dissent from the denial of rehearing en banc.

This court granted a certificate of appealability on Deshun Thomas' claim that his trial counsel failed to subject the prosecution's case to meaningful adversarial testing in violation of *Cronic*. The panel found no error and affirmed. In doing so, the panel concluded that Thomas' claim failed regardless of whether de novo review or AEDPA applied.[1]

To prevail on a claim of ineffective assistance of counsel, a petitioner must typically satisfy the two-prong test of deficiency and prejudice under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show that counsel's performance was deficient, "requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 687 (internal marks omitted). To establish prejudice, a petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

As the panel stated, *Cronic* created a limited exception to the application of *Strickland*'s two-part test where prejudice is presumed in

---

[1] I agree that de novo review applies. However, I would conclude that Thomas is entitled to relief under either de novo review or AEDPA deference.

certain situations.  *See Haynes*, 298 F.3d at 380.  Prejudice is presumed in three situations, (1) the complete denial of counsel at a critical stage; (2) if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) where counsel is called upon to render assistance under circumstances where competent counsel very likely could not.  *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002); *see also Haynes*, 298 F.3d at 380; and *Cronic*, 466 U.S. at 659.  Thomas relies on the second exception.

The panel noted that the state Fourteenth Court of Appeals "held that Thomas's trial counsel's closing arguments were professionally incompetent in violation of *Strickland v. Washington*, 466 U.S. 668 . . . (1984) because they essentially conceded his client's guilt, but appellate counsel had waived any showing, pursuant to the other *Strickland* prong, of prejudice to Thomas."  *Thomas v. Davis*, 968 F.3d 352, 353 n.1 (5th Cir. 2020).  The panel further found it "rather odd" that neither the state habeas court nor the Texas Court of Criminal Appeals addressed the state appellate court's holding.  But the panel concluded that the discrepancy did not matter.  *Id*. at n.2.

Specifically, the Fourteenth Court of Appeals affirmed the conviction and sentence but said:

> However, given trial counsel's closing argument in the punishment phase, in which he made specific reference to trial counsel's concession of appellant's guilt in closing argument in the punishment phase, combined with counsel's references to the overwhelmingly powerful evidence at the guilt-innocence phase, the totality of the representation amounts to conduct so outrageous that it falls well-below professional

> standards. Appellant's trial counsel emphasized the strength of the evidence against appellant and affirmatively argued both for finding appellant guilty and for assessing a substantial sentence. Under the circumstances of this case, no plausible basis exists and no strategic motivation could explain why trial counsel fashioned his arguments as he did. Appellant has rebutted the presumption that counsel's conduct was reasonably professional and motivated by sound trial strategy because counsel's closing arguments amount to conduct "so outrageous that no competent attorney would have engaged in it." Appellant has satisfied the first prong in *Strickland* by showing his trial counsel's conduct was deficient such that it fell below the standard of professional norms.

*See Thomas v. State*, No. 14-06-00540-CR, 2008 WL 596228, *4 (Tex. App. Mar. 6, 2008)(*Thomas II*)(internal citations omitted). But, after finding that Thomas established the deficiency prong of *Strickland*, the court then found that he had "waived error as to *Strickland*'s second prong by failing to adequately brief it on appeal." *Id*. at *5.

The panel here relied on *Haynes* to conclude that Thomas' trial counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing. *Thomas*, 968 F.3d at 355; *see also Haynes*, 298 F.3d at 381. In doing so the panel directed us to the district court's opinion, which said that counsel advocated on Thomas' behalf throughout trial, moved to suppress evidence and cross-examined witnesses. It further concluded that counsel did not concede the only factual issue in dispute, but merely described evidence against Thomas as "really strong," "substantial," "persuasive," and "pretty powerful." *Thomas*, 968 F.3d at 355. The panel also pointed to counsel's admonishment to the jury that any reasonable doubt

required them to acquit, before concluding that, read in context, counsel's "summation indicates that his comments were strategically made to maintain credibility with the jury." *Id.* at 356. Finally, it concluded that counsel's sentencing arguments during the punishment phase confirmed this "strategy," while noting that counsel died after trying this case and was never available for post-conviction inquiry about the defense or any alleged strategy. *Id.* at n.6.

However, the record does not support these conclusions, which conflict with controlling authority. As an initial matter, strategy goes to counsel's performance, not the prejudice factor. *Strickland*, 466 U.S. at 698-99. The state appellate court already found that Thomas had established deficient performance. The only issue remaining was whether the deficient performance prejudiced Thomas, which the court said Thomas had failed to brief. The panel and the district court disregarded the state appellate court's finding and reweighed the performance factor to determine that counsel's deficient performance was mere strategy.

As the panel conceded, "*Cronic* applies to concessions only when they result in a 'complete abandonment of counsel'; that is, the attorney must concede 'the only factual issues in dispute.'" *Thomas*, 968 F.3d at 355 (quoting *Haynes*, 298 F.3d at 381).[2] Again, the panel concluded that counsel

---

[2] The panel cites *Barbee v. Davis*, 728 F. App'x 259, 264 (5th Cir. 2018) for the proposition that the "Supreme Court has held that even defense counsel's full concession of guilt is not necessarily an indication that counsel has entirely failed to function as the client's advocate." *Id.* (quoting *Florida v. Nixon*, 543 U.S. 175, 189–91 (2004)) (internal marks and emphasis omitted). *Nixon* is easily distinguished as counsel there explained his

had not conceded the only factual issues in dispute, pointing to various actions taken by counsel throughout the trial. However, regardless of what counsel did earlier at trial, he conceded the only factual issues in dispute when he admitted Thomas' guilt during closing and, thus, abandoned any attempt to subject the prosecution's case to meaningful adversarial testing. Moreover, following the concession in *Haynes*, counsel "remained active at trial, probing weaknesses in the prosecution's case on the issue of intent," and cross-examining witnesses. *Id*. 298 F.3d at 382. Here, counsel conceded guilt during closing arguments. Thus, there was no opportunity for counsel to rectify his concession during some later portion of the proceedings.

Specifically, counsel repeatedly assured the jury of his trial experience and made numerous explicit statements regarding Thomas' guilt, such as: (1) "it seems really strong to me that this young man is guilty, this person I'm representing is guilty;"(2) he was "convinced that the evidence [of Thomas's guilt] [was] pretty powerful;" (3) there was "a substantial amount of evidence" demonstrating Thomas' guilt; and (4) "If you reach a verdict that says he's guilty, that's the way it is. I appreciate it." *Thomas II*, 2008 WL 596228, ** 1-2 (emphasis omitted). The jury convicted Thomas, and the trial proceeded to the punishment phase, where defense counsel first acknowledged that he had "practically consented to a guilty verdict in this case, because I thought the evidence was overwhelming based on the many

strategy to Nixon several times to "concede guilt and to home in, instead, on the life or death penalty issue." *Id*. at 189. Counsel here neither explained his strategy nor attempted to get a shorter sentence. In fact, counsel here failed to offer any mitigation.

years of experience of trying cases" and reiterated that the evidence against Thomas was "overwhelming." *Id*. at 2 (emphasis omitted). Counsel then argued that "[a]ll of the evidence—and I would be a fool if I suggested otherwise, and I'm not—is compelling that this young man deserves a pretty substantial sentence. I'm not talking about of [sic] sentence of 15 years. All of the evidence is compelling." Counsel then told the jury he wanted them to take into consideration that "[a] young man lost his life, destroyed his mother practically" and all of Thomas' prior convictions before stating, "I can assure you I'm a fairly wordy individual, but I know I can't deter you from the things you ought to do in this case. And in this case, I'm convinced, based on all of the facts, he deserves a substantial sentence." *Thomas II*, 2008 WL 596228, 2. Counsel offered nothing in mitigation and told the jury he could not quarrel with any sentence the jury selected. *Id*.

That complete abandonment of counsel falls squarely within *Cronic*. *See Haynes*, 298 F.3d at 381. When there is a "breakdown of the adversarial process," prejudice is presumed. *Cronic*, 466 U.S. at 657–58. Counsel's explicit concession of guilt on the only offense and request for a substantial sentence as a result is a breakdown of the adversarial process. Further, the subsequent objection regarding Thomas' failure to testify does not in any way correct this breakdown. The panel ultimately concluded that counsel's "strategy" paid off because Thomas received only seventy-five years imprisonment rather than life. The record in this matter clearly demonstrates that Thomas received seventy-five years instead of life in spite of counsel's performance, not because of counsel's performance. Counsel

did not admit Thomas' guilt only to a lesser-included offense; counsel admitted Thomas' guilt to the only offense. Counsel did not concede guilt in an attempt to get a lighter sentence; counsel conceded guilt and asked for a substantial sentence while failing to present anything in mitigation. At the point that counsel conceded guilt, he failed to mount a defense regardless of anything he had done prior to that concession. At the point that counsel asked for a substantial sentence, he verified that this was not an attempt at strategy. Thus, the panel decision is contrary to both *Haynes* and *Cronic*.

For these reasons, I respectfully dissent from the denial of rehearing en banc.